430 So.2d 1130 (1983)
John A. LeBLANC, Jr.
v.
Henry H. WALL, Jr., Frances Wall, Gulf States Utilities Company and Zurich-American Insurance Company.
No. 82 CA 0286.
Court of Appeal of Louisiana, First Circuit.
April 5, 1983.
Rehearing Denied May 20, 1983.
*1131 Sam J. D'Amico, Brenda M. Creswell, Baton Rouge, for plaintiff-appellant John A. LeBlanc, Jr.
W. Luther Wilson, Baton Rouge, for defendant-appellee Gulf States Utilities Co.
Ben L. Guelfo, Baton Rouge, for defendants-appellees Henry Wall, Frances Wall and Zurich-American Ins. Co.
Before PONDER, SAVOIE and CRAIN, JJ.
*1132 SAVOIE, Judge.
This appeal results from the dismissal of John LeBlanc's tort claim against Mr. and Mrs. Wall, their insurance company, and Gulf States Utilities (GSU). The questions presented are the correctness of the verdicts in favor of the defendants, and the propriety of the jury instructions.
The record amply supports the decree of the trial court. Further, the trial court was correct in charging the jury without the requested instruction, as the theory of recovery set forth therein is inappropriate in the instant case. Accordingly, we affirm.
This is a cat in a tree case. Both the cat and the tree belonged to and were on the property of Mr. and Mrs. Wall at the time of the accident. The events surrounding the accident are as follows:
John LeBlanc, voluntarily and without request, went onto the Walls' property and decided to assist the cat out of the tree. A ladder was propped against the tree and there was a metal pole on the ground. Attached to the pole was a wire. With the pole in hand, LeBlanc climbed the ladder and attempted to catch the cat by its collar. This attempt failed and he began to descend the ladder. In the process, he tilted the pole to one direction, thus causing the pole to make contact with a wire. As a result thereof, LeBlanc was thrown to the ground, injuring his back.
The trial court directed a verdict in favor of the Walls and their insurer. Subsequently, a jury returned a verdict in favor of GSU. LeBlanc appealed claiming that: (1) the trial court erred in granting the homeowner's motion for a directed verdict; (2) the jury's verdict for GSU was unsupported by the law and evidence; and (3) the trial court erred in failing to instruct that GSU could be strictly liable under La.C.C. art. 2317.

ASSIGNMENT OF ERROR NO. 1
LeBlanc assigns as error the granting of a directed verdict in favor of the homeowners. He contends the Walls had a duty to warn him of the electrical wires and/or remove the ladder and pole from the tree area.
The test for determining the landowner's liability under La.C.C. arts. 2315 and 2316 is set forth in Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976).
"... The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Thus the landowner is not liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to a visitor as to the landowner." (cites omitted). 334 So.2d at 410. (Emphasis added).
We note that LeBlanc was nineteen at the time of the accident and aware of the dangers of making contact with electrical wires. Several witnesses testified that the wires were visible, particularly to a person climbing the ladder. This is further evidenced by the pictures taken on the day of the accident.
Applying the above standard to the instant case, we find that the evidence clearly reflects that the wires were discernable to even a casual observer. Thus, it was not an exercise of reasonable care on the part of LeBlanc to scale a twenty foot ladder and use a twenty-two foot pole in the vicinity of these wires. LeBlanc's actions were not probable or reasonably foreseeable. Thus, the Walls owed LeBlanc no duty.
Further, in response to this assignment,[1] we note that in the application of the duty/risk analysis, the duty/risk element *1133 is a legal question to be determined by the court. Therefore, once the non-existence of the duty or non-inclusion of the risk is established, a directed verdict is proper. This is so regardless of whether reasonable minds could differ on a factual question.

ASSIGNMENT OF ERROR NO. 2
Secondly, LeBlanc argues that the jury's verdict in favor of GSU is unsupported by the law and the evidence.[2]
In this case, the jury was asked to return a general verdict. Therefore, we do not know whether their favorable verdict for GSU was because of its absence of fault or because of LeBlanc's fault.
The appropriate resolution of this case on appeal entails a twofold inquiry. The first is whether the scope of GSU's duty to protect against hazards in the transmission of electricity over high power lines encompassed the risk encountered by LeBlanc. If so, did GSU breach this duty? Assuming fault on the part of the utility, the second inquiry is whether LeBlanc is to be barred by his own fault. Hebert v. Gulf States Utilities Company, 426 So.2d 111 at 114-115 (La.1983).
Electric companies that utilize and maintain high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable. However, such utility is not required to guard against occurrences which reasonably cannot be expected or contemplated. Hebert, supra; Simon v. Louisiana Electric Membership Corporation, 390 So.2d 1265 (La.1980).
The record reflects that the GSU wire was 27.5 feet above the ground. The ladder measured 19 feet, 10 ¾ inches from the ground to the top step. Therefore, approximately 10 feet, 4 inches of clear air space existed between the left hand rail of the ladder to the GSU wire. LeBlanc could not have reached this wire, absent the use of the pole, even while standing on the top rung of the ladder. The overall length of the pole with the wire was 22 feet.
It is evident that a combination of an uninvited stranger, LeBlanc, entering upon the Walls' property for the purpose of climbing a 20 foot ladder with a 22 foot metal pole and wire in his hand, and inadvertently making contact with the most remote of four discernible wires, concurred to cause the accident. Under such circumstances, we find it difficult to conclude that the resulting accident reasonably could have been expected to occur.
Furthermore, assuming this accident reasonably could have been contemplated, GSU would not be liable unless it breached its duty to plaintiff.[3] In those instances where the accident is reasonably expected, the utility has a duty to either: (1) insulate the wires, or (2) adequately warn of the danger, or (3) take other proper and reasonable precautions to prevent the injury. Hebert, supra.
According to Mr. McKnight, representative of GSU, there are two ways to insulate wires: either by coating the wires in a protective rubber or by isolation. In this sense, isolation means that because of their location, the lines are not readily accessible to people.
Previously, we noted that the wire in question was 27.5 feet above the ground and 10 feet, 4 inches from the left hand rail of the ladder. The measurements establish that the wire was not easily accessible either to persons on the ground or to those on ladders. Neither would the wire have been readily accessible to a person on the ground with a 22 foot pole. Under these circumstances, we find that this particular wire was insulated by isolation and, as such, GSU did not breach its duty to plaintiff.
The second inquiry hereunder deals with the question of plaintiff's contributory negligence. *1134 We note this issue contemplates fault on the part of the utility. Therefore, we will assume this fact for discussion on this issue only.[4]
LeBlanc's duty was to act as a reasonably prudent person. As noted before, he was 19 years old at the time of the accident and aware of the dangers of electricity. The record reflects that the wires were visible. Further, one, Allen Bond, testified that he warned LeBlanc to watch out for the wire before LeBlanc ascended the ladder. Under these circumstances, we conclude that LeBlanc failed to act as a reasonably prudent person. Accordingly, his own negligence would have barred his recovery had we found that GSU was liable.
Lastly, we point out the possibility that the jury verdict was based on their finding LeBlanc did not make contact with a GSU wire. The evidence established that there were four wires. No evidence was presented to show which of the wires was touched. Mr. McKnight testified that there were no markings on the GSU wire, the ladder, the pole or the piece of coathanger attached to the pole to indicate any arcing had taken place. Thus, the finding of the jury is clearly supported by both the law and the evidence.

ASSIGNMENT OF ERROR NO. 3
In this assignment, LeBlanc asserts as error the trial court's failure to instruct the jury that GSU could be strictly liable under La.C.C. art. 2317. There is no merit to this contention.
In Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982), the Supreme Court held that in overhead power line cases, no useful purpose is served by the application of a strict liability analysis under La.C.C. art. 2317. It noted that under strict liability, a duty is established as a result of ownership and control without the necessity of showing the owner's knowledge (either actual or implied) of the danger. This duty is already present since utility companies know of the danger of uninsulated, overhead "hot" wires. Consequently, the utilities' liability depends on the question of whether it is acting reasonably in the manner in which it is maintaining the thing in custody and exposing it to others.
Accordingly, the trial court did not err in failing to instruct the jury specifically as to liability under La.C.C. art. 2317. Further, we note that the instructions given were within the confines of the above analysis.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Plaintiff-appellant is to pay all costs.
AFFIRMED.
NOTES
[1] Plaintiff argues that the trial court failed to follow the standard for granting directed verdicts as enunciated in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979), to-wit:

* * * * * *
"... If there is ... evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."
[2] Because of the broad nature of this assignment of error, we will address every stage of the inquiry. Therefore, it may be necessary to assume facts which we have contrarily disposed of.
[3] See footnote 2.
[4] See footnote 2.